*Attorney Grievance Commission of Maryland v. Jude Ambe*, Misc. Docket AG No. 21, September Term, 2018. Opinion by Barbera, CJ.

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent Jude Ambe violated Maryland Attorneys' Rules of Professional Conduct 19-301.1, 19-301.2, 19-301.3, 19-301.4, 19-301.5, 19-301.15, 19-301.16, 19-303.3, 19-308.1, and 19-308.4. These violations principally arose from Respondent's inexcusable failure to appear in court; various material misrepresentations to a tribunal and Bar Counsel; neglect of his client's case; and failure to properly maintain client funds in his attorney trust account. In conjunction with several aggravating factors, these violations result in disbarment as the appropriate sanction for Respondent's misconduct.

Circuit Court for Montgomery County
Case No. 455261-V
Argued: September 8, 2019

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 21

September Term, 2018

_____

ATTORNEY GRIEVANCE COMMISION OF
MARYLAND

v.

JUDE AMBE

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Adkins, Sally D.,
   (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: October 21, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed in this Court a Petition for Disciplinary or Remedial Action against Respondent, Jude Ambe, regarding a complaint filed against him by a former client, Hans Yondo Ngale ("Mr. Ngale"). The petition alleges violations of the Maryland Attorneys' Rules of Professional Conduct ("MARPC") 19-301.1 (Competence), 19-301.2 (Scope of Representation), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.5 (Fees), 19-301.15 (Safekeeping Property), 19-301.16 (Declining or Terminating Representation), 19-303.3 (Candor), 19-308.1 (Bar Admission and Disciplinary Matters), and 19-308.4 (Misconduct).

On September 20, 2018, Petitioner filed its petition. This Court transmitted the matter to the Circuit Court for Montgomery County and designated the Honorable James A. Bonifant ("the hearing judge") to conduct an evidentiary hearing and make proposed findings of fact and conclusions of law. The hearing took place on February 13-14, 2019. At the hearing, the judge heard testimony from Respondent and Mr. Ngale.

We adopt in large part the hearing judge's proposed findings of fact and conclusions of law. Based on the rule violations that Respondent committed, as well as the aggravating and mitigating factors we have identified, we disbar Respondent.

## I.

### The Hearing Judge's Findings of Fact

We summarize here the hearing judge's findings of fact, which are supported by clear and convincing evidence.

1

*Background*

Respondent was admitted to the New York Bar in 2009. He is not a member of the Maryland Bar.[1] During his legal career, Respondent operated an immigration law practice. While representing Mr. Ngale, Petitioner maintained an office in Montgomery County, Maryland.

Mr. Ngale is a citizen of the Republic of Cameroon. His native language is Bakweri and he speaks Pidgin English. He entered the United States through Mexico in April 2016 and immediately applied for asylum. In a written statement given to the Department of Homeland Security, Mr. Ngale claimed he was imprisoned and tortured by Cameroonian officials. While being transferred from one facility to another during his imprisonment, Mr. Ngale escaped and traveled to Nigeria, then to Mexico.

### 1. First Master Calendar Hearing

The Department of Homeland Security held Mr. Ngale in a detention center in Adelanto, California from April 17, 2016, to November 2016. Mr. Ngale received a "Notice to Appear" before the United States Immigration Court ("Immigration Court"), issued June 9, 2016. The Notice alleged that Mr. Ngale was subject to removal proceedings because he was not a United States citizen or national, and he entered the country without proper documentation. The Immigration Court scheduled a Master Calendar Hearing for

---

[1] Respondent is nonetheless subject to the disciplinary authority of the Court of Appeals pursuant to MARPC 19-308.5(a)(2).

June 22, 2016, to identify the issues in Mr. Ngale's case and schedule deadlines and future hearings.

Mr. Ngale spoke to Respondent on the telephone shortly before and after his first Master Calendar Hearing on June 22, 2016. Mr. Ngale had learned of Respondent through Norbert Chingo, another detainee at the Adelanto Detention Center. Respondent also represented Norbert Chingo. Norbert Chingo's brother, Derrick Chingo ("Mr. Chingo"), knows Respondent through an adult soccer club in Maryland.

During the calls on June 22, 2016, Mr. Ngale hired Respondent to represent him regarding his asylum petition and request to be released on bond. Mr. Ngale and Respondent later disagreed about the terms of payment reached during those phone calls. The hearing judge found that Respondent agreed to: (1) represent Mr. Ngale; (2) litigate the asylum petition before the Immigration Court and help secure Mr. Ngale's release on bond; and (3) charge a $5,000 flat fee that included travel expenses. Mr. Ngale was to remit $1,400 immediately and pay the balance over time after his release.

Respondent claimed that during the representation, Mr. Ngale permitted Mr. Chingo to act on his behalf. In his statement under oath to Bar Counsel, Respondent stated that he provided Mr. Chingo with a copy of a retainer agreement for Mr. Ngale. At trial, Respondent testified to the contrary and admitted the terms of the representation were never memorialized in writing.

### 2. *Second Master Calendar Hearing*

Upon the advice of Respondent, Mr. Ngale appeared *pro se* at the first Master Calendar Hearing and requested a continuance to secure representation. The Immigration Court granted the request and scheduled a second Master Calendar Hearing for July 13, 2016. On June 27, 2016, Mr. Ngale's brother-in-law, Elvis Munjong, received $1,400 from Mr. Ngale's family via Western Union and gave it to Respondent. There are no billing records for that transaction. Respondent could not confirm that he gave a receipt to Elvis Munjong when he received the payment, but he testified that he later provided Mr. Chingo with a receipt. Respondent did not produce any receipts or records of the payment, however.

### 3. *Third Master Calendar Hearing*

On July 12, 2016, Respondent filed a Notice of Appearance on Mr. Ngale's behalf and a Motion for Continuance of the July 13, 2016, second Master Calendar Hearing. The Immigration Court granted the motion, scheduled a third Master Calendar Hearing for August 11, 2016, and stated in the order, "The Court expects both pleadings as well as all application[s] for relief to be filed at the next hearing or they will be deemed waived/abandoned." Respondent did not inform Mr. Ngale of his intention to request a continuance or that it was granted.

Respondent and Mr. Ngale spoke on the phone on July 12, 2016, and Respondent instructed Mr. Ngale to fill out a Form I-589, Application for Asylum and for Withholding

4

Removal. In late July 2016, Respondent received by mail these documents and Mr. Ngale's handwritten narrative about his captivity in Cameroon.

On August 9, 2016, Respondent travelled to California and met Mr. Ngale at the Adelanto Detention Center to prepare his asylum application before the upcoming third Master Calendar Hearing. After that meeting, Respondent returned to his hotel room to finalize the application. Respondent testified at the evidentiary hearing, and also under oath in a statement to Bar Counsel, that immediately preceding the third Master Calendar Hearing on August 11, 2016, he and Mr. Ngale reviewed and edited the application from beginning to end. The hearing judge found that Respondent's testimony was not credible regarding how substantively Respondent reviewed the asylum application with Mr. Ngale. Rather, Mr. Ngale's testimony established that Respondent rushed through filling out the application. Mr. Ngale's testimony further established that Respondent did not give Mr. Ngale an opportunity to read the application before appearing in court. Respondent instructed Mr. Ngale to sign the application in front of the Immigration Court judge and just say "yes" if asked whether Mr. Ngale had read the documents. Respondent filed this application with the Immigration Court, and a hearing on the merits ("Merits Hearing") was scheduled for November 7, 2016.

4. *First Bond Hearing*

The Immigration Court judge also scheduled a bond hearing ("Bond Hearing") for October 19, 2016. Respondent filed a motion to appear by telephone. He testified that the court denied the motion, and "for administrative reasons" rescheduled the Bond Hearing

5

to November 7, 2016, the same day as the Merits Hearing. Contrary to this testimony, the hearing judge determined, based on a Show Cause Order issued by the Immigration Court, that Respondent appeared via telephone at the October 19, 2016, Bond Hearing and requested the continuance.

### 5. *Merits Hearing and Second Bond Hearing*

Respondent failed to appear at the November 7, 2016, Merits and Bond Hearings. He had traveled to Cameroon on October 31, 2016, and returned on November 8, 2016. Respondent did not file any motions for withdrawal, postponement, or to appear telephonically, nor did he contact the Immigration Court to give notice of his absence. Mr. Ngale requested a continuance at the Merits Hearing and the Immigration Court denied it. Forced to proceed without counsel, Mr. Ngale represented himself and gave testimony inconsistent with his application for asylum. For example, the torture described in the asylum application included electrocution, but this description was omitted in Mr. Ngale's testimony. The application also described with detail the political group Mr. Ngale claimed to be a member of, but Mr. Ngale testified that he did not "really know much about the group" when questioned by the judge.

Based on those inconsistencies, the Immigration Court found Mr. Ngale not credible and denied his asylum application. He was given thirty days to file an appeal. The Immigration Court also ordered Mr. Ngale to be released on $25,000 bond.

## 6. *Order to Show Cause*

When Respondent missed the Merits and Bond Hearings on November 7, 2016, the Immigration Court issued an Order to Show Cause regarding his absence. In an untimely response to the Immigration Court, Respondent alleged he traveled to Cameroon on October 30, 2016, due to a family emergency.

## 7. *Release on Bond and Appeal*

Mr. Ngale called Respondent the day after the Merits and Bond Hearings to get assistance with securing the bond for his release. Respondent located a bond company who wrote and arranged to pay the $25,000 bond and associated expenses. Respondent directed Mr. Ngale to travel to Maryland after his release.

Mr. Chingo gave Respondent $6,000 on Mr. Ngale's behalf for the bond and related expenses. Respondent did not deposit the $6,000 in an attorney trust account. There are no records about the bond expenses, nor documents showing how the money was spent except for a deposit receipt from Bank of America. Respondent testified at the evidentiary hearing that the bond premium and processing fee totaled $3,850. However, Respondent could not properly account for the remaining $2,150. Respondent stated under oath to Bar Counsel that he agreed to assist with the bond for an additional $1,250. When questioned at the evidentiary hearing about how the $6,000 was allocated, Respondent omitted the $1,250 from his testimony. Respondent also gave conflicting testimony on the various expenses associated with transferring Mr. Ngale from California to Maryland. He could not, however, provide any supporting documentation for those expenses.

7

In Maryland, Respondent and Mr. Ngale met to discuss appealing Mr. Ngale's Order of Removal, and Respondent proposed a $1,500 flat fee. They disputed the funds already owed to Respondent, and Mr. Ngale paid $500 towards the appeal. Respondent did not deposit the funds in an attorney trust account. Respondent filed a Notice of Appeal with the Board of Immigration Appeals on December 5, 2016, and entered his appearance on behalf of Mr. Ngale.

### 8. *Termination*

After the Notice of Appeal was filed, Respondent refused to discuss the appeal with Mr. Ngale unless Mr. Ngale paid more money. Mr. Ngale terminated the representation in December 2016, and requested his case file. Respondent refused to turn over the file and informed Mr. Ngale that he needed the file to respond to the Immigration Court's Show Cause Order. At the evidentiary hearing, Respondent further testified that the file was Respondent's property. Mr. Ngale's new attorney, Ms. Beach-Oswald, mailed Respondent a letter on February 23, 2017, to inform him that she now represented Mr. Ngale and again requested his case file.[2] Respondent failed to respond.

Respondent never filed a motion with the Immigration Court to withdraw his appearance as Mr. Ngale's attorney. On March 8, 2017, the Board of Immigration Appeals mailed Respondent a briefing schedule, directing Respondent to file Mr. Ngale's appeal

---

[2] Ms. Beach-Oswald mailed the letter to Respondent's office but in the salutation addressed the letter to "Mr. Tatung."

brief by March 30, 2017. Respondent did not inform Mr. Ngale or Ms. Beach-Oswald of the briefing schedule or that his appeal brief was due by the end of the month.

9. *Bar Counsel's Investigation*

Mr. Ngale filed a complaint against Respondent with the Attorney Grievance Commission on April 17, 2017. In his response, Respondent made assertions that contradict his response to the Show Cause Order and his testimony at the evidentiary hearing. Principally, Respondent explained that his trip to Cameroon was pre-planned, contrary to the family emergency he cited in his response to the Show Cause Order to the Immigration Court. Respondent further explained that when the Immigration Court rescheduled Mr. Ngale's October 19, 2016, Bond Hearing to November 7, 2016, Respondent knew this date conflicted with his travel plans and informed Mr. Ngale about the conflict. Furthermore, Respondent averred to Bar Counsel that Mr. Ngale and his new attorney are using him as a "scapegoat" to re-open Mr. Ngale's case. As such, he was "at a lost [*sic*] why instead of thanking me; [*sic*] Mr. Ngale is filing a complaint against me."

**II.**

**The Hearing Judge's Conclusions of Law**

The hearing judge determined that Respondent violated MARPC 19-301.1, 19-301.2(a), 19-301.3, 19-301.4(a) and (b), 19-301.5(a), 19-301.15(a) and (c), 19-301.16(a) and (d), 19-303.3(a), 19-308.1(a), and 19-308.4(a), (c), and (d). Respondent excepts to some of the hearing judge's findings of fact and conclusions of law; Bar Counsel excepts

to none.  We shall address each factual finding and conclusion of law to which Respondent

excepts and, in the course of doing so, address the hearing judge's conclusions of law.

## III.

## Standard of Review

This Court has original and complete jurisdiction in attorney disciplinary

proceedings and "conducts an independent review of the record."  *Attorney Grievance*

*Comm'n v. McLaughlin*, 456 Md. 172, 190 (2017) (citation omitted).  The hearing judge's

findings of fact are left undisturbed unless those findings are clearly erroneous or either

party successfully excepts to them.  *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325,

334 (2013).

The hearing judge's factual findings are not clearly erroneous if they are supported

by "any competent material evidence."  *Attorney Grievance Comm'n v. McDonald*, 437

Md. 1, 16 (2014) (citation omitted).  We review the hearing judge's conclusions of law

without deference.  *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 178 (2015).

## IV.

## Discussion

*Respondent's Factual Exceptions*

Respondent makes ten exceptions to the proposed findings of fact and conclusions

of law.  The hearing judge determined—and we accept—that Mr. Ngale was more credible

than Respondent regarding several of the factual findings to which Respondent takes

exception.  To the extent that the hearing judge relied on a credibility determination for a

factual finding or Respondent did not produce any other evidence that warrants overturning the findings of fact or conclusions of law, we overrule those exceptions. *Attorney Grievance Comm'n v. Thompson*, 462 Md. 112, 134 (2018) ("Given that Respondent did not present further evidence in the record to reveal that the hearing judge's findings were clearly erroneous, we reject Respondent's factual exceptions.").

Those exceptions include whether: (1) Mr. Ngale struggles with the English language; (2) the $5,000 flat fee included travel expenses; (3) Respondent was authorized to seek a continuance of the July 13, 2016, hearing; (4) Mr. Ngale and Respondent substantively reviewed the asylum application together; (5) Respondent appeared for the October 19, 2016, Bond Hearing; and (6) Mr. Ngale requested an accounting.

Respondent did not produce any evidence regarding two of the remaining four exceptions: (1) the date Respondent received Mr. Ngale's partial payment of $1,400; and (2) whether Derrick Chingo was authorized to speak on Mr. Ngale's behalf. Neither Respondent nor Mr. Ngale dispute that Respondent received $1,400 from Mr. Ngale's brother-in-law, Elvis Munjong; they only dispute the date it was received. The date, however, is of no consequence to the conclusions of law and, absent evidence to the contrary, nothing warrants disturbing this factual finding.

With regard to Mr. Chingo, Respondent urges this Court to assume Mr. Ngale authorized Respondent to speak with Mr. Chingo on Mr. Ngale's behalf. Mr. Ngale "testified that Derrick Chingo talked to Respondent for him; he recited Derrick Chingo's street address from memory; and he asked Derrick Chingo to give money that was sent

from his family in Cameroon to Respondent." As the hearing judge determined, however, Respondent never received a written authorization from Mr. Ngale to interact with Mr. Chingo on his behalf. Moreover, because Respondent and Mr. Ngale were in frequent contact, there would be no reason Respondent should interact with Mr. Chingo in lieu of Mr. Ngale (e.g., when providing a retainer agreement). As such, the hearing judge's finding that Respondent lacked authorization to interact with Mr. Chingo on Mr. Ngale's behalf is not clearly erroneous, and this exception is overruled.

Finally, Respondent excepts to the hearing judge's finding that the "issue was not the maintenance of an attorney trust account, but rather a complete failure to use the attorney trust account." Respondent put forth no argument or evidence in support of this exception. Nonetheless, we discuss this exception further when addressing the mitigating and aggravating factors that were argued in this case.

### Conclusions of Law

We turn now to review the hearing judge's conclusions of law.

### MARPC 19-301.1: Competence

MARPC 19-301.1 requires an attorney to "provide competent representation to a client." Incompetent representation occurs when an attorney fails "to take necessary, fundamental steps" in a client's case. *Attorney Grievance Comm'n v. Bellamy*, 453 Md. 377, 393 (2017) (citations omitted). This Rule may be violated when an attorney fails to appear in court on a client's behalf, *Bellamy*, 453 Md. at 393; fails to adequately prepare a

12

client, *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 601 (2016); or mishandles client funds, *Attorney Grievance Comm'n v. White*, 448 Md. 33, 58 (2016).

Respondent violated MARPC 19-301.1 by failing to attend the November 7, 2016, Merits and Bond Hearings. For an attorney to fail to appear without sufficient explanation is a "particularly egregious" violation of Rule 19-301.1. *Hamilton*, 444 Md. at 180; *see also Attorney Grievance Comm'n v. Lang & Falusi*, 461 Md. 1, 44 (2018). Respondent had notice of the Merits Hearing as early as August 11, 2016, when that date was set by the Immigration Court at the third Master Calendar Hearing. The October 19, 2016, Bond Hearing was postponed to November 7, 2016, with the Merits Hearing, of which Respondent also had notice.[3] Respondent informed Mr. Ngale he would not attend the Merits and Bond Hearings due to pre-existing travel plans, yet Respondent did not notify the Immigration Court of his intentions. Neither did Respondent request a postponement nor secure alternative representation for Mr. Ngale.

Respondent asks this Court to excuse his absence because Mr. Ngale's family did not pay for Respondent's return airfare from Cameroon. However, this was not part of the agreed upon fee arrangement, and even so, Respondent still was required to appear. As Mr. Ngale's counsel, Respondent was obligated to ensure Mr. Ngale received proper representation at the Merits and Bond Hearings. Rather, Respondent inexcusably failed to attend these hearings despite several months of advance notice.

---

[3] There is conflicting testimony about whether the Immigration Court postponed the hearing of its own accord or upon Respondent's motion. The hearing judge determined that it was Respondent who requested the postponement.

Respondent also violated MARPC 19-301.1 by failing to adequately review Mr. Ngale's asylum application with him. To his detriment, Mr. Ngale provided testimony before the Immigration Court that conflicted with his asylum application. For example, the Immigration Court judge quoted a line from the application about Mr. Ngale's "militant" siblings. When questioned about this statement, Mr. Ngale asked the judge, "What is militant?" Had Respondent reviewed the application with Mr. Ngale and properly prepared him for the Merits Hearing, these inconsistencies may have been reconciled before appearing in court. Respondent denied Mr. Ngale the opportunity to understand the contents of his asylum application, which led to Mr. Ngale's inconsistent testimony and ultimately the order of his removal to Cameroon.

Finally, Respondent violated MARPC 19-301.1 by failing to appropriately handle and account for the funds entrusted to him on Mr. Ngale's behalf during the pendency of the representation.

### MARPC 19-301.2(a): Scope of Representation

MARPC 19-301.2(a) requires lawyers to "abide by a client's decision concerning the objectives of representation." For an attorney to satisfy those objectives, clients need to be able to make informed decisions. *Hamilton*, 444 Md. at 182. "In order for a client to make informed decisions … an attorney must give the client honest updates regarding the status of his or her case." *Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 380 (2015).

Respondent violated MARPC 19-301.2 by requesting postponements without Mr. Ngale's knowledge or consent. *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 698 (2019) (finding Rule violation where attorney filed motions for continuance and failed to notify her client). Respondent filed motions to continue the July 13, 2016, second Master Calendar Hearing and the October 19, 2016, Bond Hearing. Mr. Ngale even appeared for the July 13, 2016, second Master Calendar Hearing under the impression that it was going forward as originally scheduled. Respondent alleges the Immigration Court of its own volition postponed the October 19, 2016, Bond Hearing, but the hearing judge was not clearly erroneous in determining otherwise.

Respondent also violated MARPC 19-301.2 when he refused to discuss Mr. Ngale's appeal with Mr. Ngale because he had not been paid. Attorneys are obligated to keep clients abreast of the status of their cases and refusing to do otherwise is a violation of this Rule. *See, e.g.*, *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 320 (2012) (finding Rule violation where attorney ignored repeated requests for information); *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 218, 220 (2006) (same).

**MARPC 19-301.3: Diligence**

MARPC 19-301.3 requires an attorney to "act with reasonable diligence and promptness in representing a client." This Court has held that an attorney violates MARPC 19-301.3 by failing to appear at a scheduled court proceeding. *Attorney Grievance Comm'n v. Byrd*, 408 Md. 449, 478 (2009). The rationale supporting a Rule 19-301.1 violation may support a Rule 19-301.3 violation. *Attorney Grievance Comm'n v. Mooney*,

359 Md. 56, 94 (2000). For the same reasons Respondent violated Rule 19-301.1 regarding his absence from the November 7, 2016, Merits and Bond Hearings, the Court finds he also violated Rule 19-301.3.

Respondent further violated this Rule by failing to sufficiently confer with Mr. Ngale about the asylum application before the Merits Hearing. *Attorney Grievance Comm'n v. Smith*, 457 Md. 159, 216–17 (2018) (finding that a failure to confer in a meaningful way violates MARPC 19-301.3). Adequate preparation and consultation with Mr. Ngale before the Merits Hearing would have reduced the likelihood of Mr. Ngale giving inconsistent testimony; Respondent's failure to do so thus violated MARPC 19-301.3.

### MARPC 19-301.4(a) and (b): Communication

MARPC 19-301.4(a) requires attorneys to keep clients reasonably informed about the status of their cases and promptly reply to requests for information. Rule 19-301.4(b) further requires that attorneys reasonably explain matters to their clients so that they may make informed decisions. In *Attorney Grievance Comm'n v. Kremer*, we noted that violations of this Rule are closely related to violations of MARPC 19-301.3. 432 Md. at 336.

This case is replete with examples of MARPC 19-301.4 violations. For the same reasons Respondent violated MARPC 19-301.3, he violated MARPC 19-301.4. First, Respondent failed to inform Mr. Ngale about the July 13, 2016, and October 19, 2016, continuances. He also failed to communicate with Mr. Ngale in a manner that facilitated

preparing an accurate and complete asylum application. *See Smith*, 457 Md. at 217 (holding that attorney violated MARPC 19-301.4 by failing to communicate with his client about the legal theories in his client's post-conviction relief application). Neither did Respondent review this application with Mr. Ngale nor prepare him for the Merits Hearing. Finally, Respondent failed to explain to Mr. Ngale how his funds were to be distributed during the representation.

### MARPC 19-301.5: Fees

MARPC 19-301.5 requires that the fees charged by an attorney be reasonable. "[T]o be reasonable, the fees must be commensurate with the legal services provided." *Bellamy*, 453 Md. at 397. An otherwise reasonable fee at the beginning of a representation "become[s] unreasonable if the lawyer fails to earn it." *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012) (citations omitted).

Respondent's fee was not unreasonable at the onset of the representation, but Respondent nonetheless violated MARPC 19-301.5 by failing to earn it. The hearing judge found that Mr. Ngale and Respondent agreed upon a $5,000 flat fee with $1,400 payable immediately and the remainder to be paid once Mr. Ngale was released and became employed. Once Mr. Ngale's application was denied, they further agreed to an additional $1,500 for Respondent to handle Mr. Ngale's appeal. Mr. Ngale paid Respondent $7,900 over the course of the representation: $1,400 towards the flat fee; $6,000 for costs related to the bond and associated expenses; and $500 towards the appeal. Respondent kept no records or receipts for any of those transactions. Moreover, Respondent's testimony about

17

those funds was irresolute and conflicted with Mr. Ngale's testimony, which the hearing judge deemed more credible.

We recognize that the production of meaningful work determines the reasonableness of a fee. *Attorney Grievance Comm'n v. Framm*, 449 Md. 620, 652–53 (2016) (finding a violation of this Rule where attorney's work was not meaningful even though one of her clients achieved the desired result). The hearing judge determined that Respondent assisted Mr. Ngale with securing his bond and arranging his travel from the detention center in California to Maryland. Respondent, however, was principally hired to assist Mr. Ngale with his asylum application, not just to secure a bond. As previously discussed, Respondent's work on the asylum application was deficient—he rushed through completing the application, spent little time reviewing it with his client, and failed to appear in court as scheduled to argue the merits. Respondent did not perform meaningful work on Mr. Ngale's asylum application, thus he violated MARPC 19-301.5.

### MARPC 19-301.15(a) and (c): Safekeeping Property

MARPC 19-301.15(a) directs that all "[f]unds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter." Maryland Rule 19–407(a) requires attorneys to maintain records regarding the receipt and disbursement of client funds. MARPC 19-301.15(a) also directs attorneys to "create and maintain records accounting for client and third-party funds and preserve the records for at least five years after each record was created." *Lang*, 461 Md. at 52. MARPC 19-301.15(c) requires that

18

pre-paid legal fees be deposited in an attorney trust account, and withdrawal of them is permitted only when those fees are earned. *Attorney Grievance Comm'n v. Sanderson*, 465 Md. 1, 52–53 (2019) (finding a MARPC 19-301.15 violation where attorney failed to maintain funds in trust until earned).

Respondent violated MARPC 19-301.15. As discussed above, on three separate occasions Respondent received payments on Mr. Ngale's behalf. Respondent never deposited any of those funds into an attorney trust account. "An attorney violates [MARPC 19-301.15] when he or she does not deposit trust funds into an attorney trust account and does not obtain the client's informed consent to do otherwise." *Hamilton*, 444 Md. at 189. Respondent also did not create any records associated with either the deposit or disbursement of those funds. *See Attorney Grievance Comm'n v. Ross*, 428 Md. 50, 78–79 (2012) (finding Rule violation where attorney failed to maintain proper trust account records). Respondent attempts to justify these failures by claiming that he earned his fee by the time the money was received. The hearing judge, however, found no credible evidence to support that assertion.

### MARPC 19-301.16(a) and (d): Terminating Representation

MARPC 19-301.16(a)(3) requires attorneys to withdraw from representation when discharged by a client. In *Attorney Grievance Comm'n v. Davis*, this Court held that an attorney violated this Rule by failing to file a motion to withdraw her appearance after a client terminated her. 375 Md. 131, 153 (2003)*; see also Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 365 (2006) (finding that a six-month delay in filing a motion to

withdraw after termination was a violation of this Rule). Once an attorney-client relationship is terminated, MARPC 19-301.16(d) mandates that the attorney "take steps to the extent reasonably practicable to protect a client's interests." MARPC 19-301.16(d) is violated when an attorney fails to return unearned fees and papers. *Attorney Grievance Comm'n v. Moore*, 447 Md. 253, 269 (2016); *see also Kremer*, 432 Md. at 336.

Respondent violated MARPC 19-301.16(a). After Mr. Ngale terminated Respondent in December 2016, Respondent was obligated to withdraw his appearance before the Board of Immigration Appeals, but he failed to do so. Respondent provided no justification for this failure and it resulted in Respondent's receiving the briefing schedule for Mr. Ngale's appeal.

Respondent took no actions to notify Mr. Ngale about the briefing schedule, thereby violating MARPC 19-301.16(d). Respondent further violated the Rule by refusing to provide Mr. Ngale's case file first to Mr. Ngale when requested in December 2016 and again when requested by successor counsel in February 2017. Finally, Respondent violated MARPC 19-301.16(d) by failing to return unearned funds. Because Respondent's fee became unreasonable based on his failure to perform meaningful work, as discussed above, Respondent was obligated to provide a refund. *See Attorney Grievance Comm'n v. Patterson*, 421 Md. 708, 735–36 (2011) (finding Rule violation where attorney did not provide meaningful services, yet did not refund unearned fee to client).

**MARPC 19-303.3: Candor Toward the Tribunal**

MARPC 19-303.3(a)(1) provides, in pertinent part, that a lawyer "shall not knowingly … make a false statement of fact or law to a tribunal." This duty stems from the proposition that "[e]very court has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it." *Attorney Grievance Comm'n v. Smith*, 442 Md. 14, 34 (2015) (citation omitted). Therefore, "an attorney 'must be candid at all times with a tribunal or inquiry board.'" *Attorney Grievance Comm'n v. Butler*, 456 Md. 227, 238 (2017) (quoting *Attorney Grievance Comm'n v. Joseph*, 422 Md. 670, 699 (2011)). Accordingly, a lawyer violates MARPC 19-303.3(a)(1) when he or she knowingly provides a court with false information. *Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 32 (2006).

Respondent violated MARPC 19-303.3. After he failed to appear at the November 7, 2016, Merits Hearing, the Immigration Court issued Respondent an Order to Show Cause regarding his absence. In his response, Respondent wrote: "On or about the 30th[] of October 2016, I had an emergency and was forced on very short notice to travel out of the country to my native Cameroon in West Africa." When questioned by Bar Counsel about his absence, Respondent stated that the trip was pre-planned, and he knew about it as early as October 18, 2016. Furthermore, he testified at trial that he traveled to Cameroon for his uncle's funeral and a swearing-in ceremony for which he was given short notice. These various inconsistencies led the hearing judge to conclude that there was no emergency necessitating Respondent's urgent departure. Rather, the statement to the Immigration Court was a misrepresentation to conceal Respondent's misconduct. Because

21

this misrepresentation formed the basis of his reply to the Show Cause Order, the misrepresentation was material and therefore Respondent violated MARPC 19-303.3.

**MARPC 19-308.1: Bar Admissions and Disciplinary Matters**

MARPC 19-308.1(a) is violated when an attorney knowingly makes a false statement of material fact in a disciplinary matter. *See, e.g.*, *Attorney Grievance Comm'n v. Robbins*, 463 Md. 411, 462–63 (2019) (finding that attorney knowingly made false statements in his letter to Bar Counsel because of his conflicting statement under oath to Bar Counsel and testimony at trial).

Respondent violated MARPC 19-308.1 for the same reason he violated MARPC 19-303.3—he misrepresented his travel plans to Cameroon. In his letter to Bar Counsel, Respondent wrote that when he learned the Bond Hearing was rescheduled from October 19, 2016, to November 7, 2016, he informed Mr. Ngale and Mr. Chingo about his pre-planned travel arrangements. This statement directly contradicts his statements to the Immigration Court in his reply to the Show Cause Order and his testimony at the evidentiary hearing.

**MARPC 19-308.4(a), (c), and (d): Misconduct**

MARPC 19-308.4(a) is violated if any rule under the MARPC is violated. MARPC 19-308.4(c) is violated if an attorney "engage[s] in conduct involving dishonesty, fraud, deceit or misrepresentation." Intent to deceive is not required in finding a Rule 19-308.4(c) violation as "long as an attorney knowingly makes a false statement, [because] he necessarily engages in conduct involving misrepresentation." *Attorney Grievance Comm'n*

22

*v. Dore*, 433 Md. 685, 708 (2013).  Finally, MARPC 19-308.4(d) is violated when an attorney's conduct is "prejudicial to the administration of justice."  This occurs "when [an attorney's] conduct impacts negatively the public's perception or efficacy of the courts or legal profession."  *Attorney Grievance Comm'n v. Barnett*, 440 Md. 254, 267 (2014) (citation omitted).  Misconduct that constitutes a violation of MARPC 19-308.4(c) may also violate 308.4(d). *Attorney Grievance Comm'n v. Worsham*, 441 Md. 105, 129–30 (2014).

Having violated several other Rules of Professional Conduct, Respondent violated MARPC 19-308.4(a).  Respondent's statements to Bar Counsel and the Immigration Court, which violated MARPC 19-303.3 and 308.1(a), also constitute violations of MARPC 19-308.4(c), as they are misrepresentations.  Finally, we agree with the hearing judge's assessment that Respondent's conduct, taken as a whole, violates MARPC 19-308.4(d). *Attorney Grievance Comm'n v. Aita*, 458 Md. 101, 138–39 (2018) (remarking in a MARPC 19-308.4(d) analysis that "[t]he public must be able to trust that when utilizing a lawyer's service, the lawyer will appear on their behalf when required and pursue the appropriate remedies."); *see also Attorney Grievance Comm'n v. Walker-Turner*, 428 Md. 214, 232 (2012) (finding a MARPC 19-308.4(d) violation where attorney failed to appear at scheduled court proceedings).

## Aggravating Factors and Mitigating Factors

We next address whether there are any mitigating or aggravating factors present. "A weighing of 'the attorney's misconduct against any existing mitigating or aggravating

23

factors' is essential to determining the proper sanction." *Attorney Grievance Comm'n v. Steinhorn*, 462 Md. 184, 202 (2018) (citations omitted). The Respondent must prove the presence of mitigating circumstances by a preponderance of the evidence. *See Joseph*, 422 Md. at 695. Bar Counsel has the burden of proving the existence of aggravating factors by clear and convincing evidence. *See Thompson*, 462 Md. at 131.

The mitigating factors we consider when determining the appropriate sanction include:

1. absence of a prior disciplinary record;
2. absence of a dishonest or selfish motive;
3. personal or emotional problems;
4. timely good faith efforts to make restitution or to rectify consequences of misconduct;
5. full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
6. inexperience in the practice of law;
7. character or reputation;
8. physical or mental disability or impairment;
9. delay in disciplinary proceedings;
10. interim rehabilitation;
11. imposition of other penalties or sanctions;
12. remorse; and
13. remoteness of prior offenses.

*See Attorney Grievance Comm'n v. Lefkowitz*, 463 Md. 165, 178–79 (2019).

Respondent testified that he learned "two, maybe three things" from this disciplinary proceeding: (1) not to make exceptions on providing clients with a retainer agreement, and (2) how to maintain an attorney trust account. In light of his experience, Respondent instituted a new calendar system and hired an accountant to assist with his attorney trust account.

24

The hearing judge determined that this testimony failed to demonstrate any mitigating factors. First, Respondent's new position on his attorney trust account was not a mitigating factor because at "issue was not maintenance of an attorney trust account, but rather a complete failure to use the attorney trust account." Respondent excepts to this characterization, to no avail. The record is devoid of any evidence that Respondent used an attorney trust account while representing Mr. Ngale. Rather, Respondent admitted multiple times during the hearing and under oath to Bar Counsel that he did not deposit Mr. Ngale's funds into an attorney trust account. We overrule the exception, and agree with the hearing judge that Respondent's newfound maintenance of his attorney trust account is not a mitigating factor. Instituting a new scheduling system is likewise not a mitigating factor. Respondent knowingly chose not to attend the November 7, 2016, Merits and Bond Hearings, notwithstanding Respondent's assertion to the contrary. There was no scheduling error.

Respondent also testified at the hearing that he expressed regret to Mr. Ngale "multiple times" about missing the November 7, 2016, Merits and Bond Hearings. However, Respondent later testified that he did not speak with Mr. Ngale again after Mr. Ngale terminated the representation in December 2016. Furthermore, in his letter to Bar Counsel, Respondent questioned why Mr. Ngale filed a complaint against him rather than thank him for his services. We accept the hearing judge's determination that Respondent never expressed regret to Mr. Ngale.

25

The aggravating factors we consider when determining the appropriate sanction include:

1. prior disciplinary offenses;
2. dishonest or selfish motive;
3. pattern of misconduct;
4. multiple offenses;
5. "bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;"
6. submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
7. refusal to acknowledge the wrongful nature of conduct;
8. the vulnerability of the victim;
9. substantial experience in the practice of law; and
10. display of indifference to making restitution.

*See Attorney Grievance Comm'n v. Sperling*, 434 Md. 658, 676–77 (2013) (citation omitted).

Bar Counsel alleged, and the hearing judge agreed, that each of the above-listed aggravating factors was present. We disagree regarding two of these factors. The evidence does not support a finding that Respondent displayed a pattern of misconduct or obstructed the disciplinary proceedings. The remaining aggravating factors are, however, supported by clear and convincing evidence.

Most salient is the vulnerability of Mr. Ngale. This Court acknowledges that immigrants are a vulnerable class, and as such, "we must impress upon [Respondent], and all other lawyers, the importance of diligent representation and adequate communication in immigration cases." *Attorney Grievance Comm'n v. Landeo*, 446 Md. 294, 352–53 (2016); *see also Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 558 (2014) ("We have recognized previously the special vulnerability of immigrants as clients."). Mr. Ngale

26

was a vulnerable client who heavily depended on Respondent. He entered this country with limited resources, struggles with the English language, and was detained in California during nearly all of the representation.

Taking the other aggravating factors in turn, we begin by noting that this is Respondent's third disciplinary proceeding. This Court reprimanded Respondent on February 22, 2012, for the unauthorized practice of law, among other rule violations. *Attorney Grievance Comm'n v. Ambe*, 425 Md. 98 (2012). On October 24, 2012, the New York Appellate Division also issued Respondent a censure (similar to a reprimand in Maryland) for multiple violations of the New York Rules of Professional Conduct. *In re Ambe*, 951 N.Y.S.2d 242 (N.Y. App. Div. 2012).

Respondent has a decade of experience in immigration law and has handled hundreds of such cases, thus he is an experienced attorney. Despite this extensive experience, Respondent committed multiple rule violations during his representation of Mr. Ngale. When confronted with his misconduct, Respondent made deceitful statements to Bar Counsel and the Immigration Court.

Respondent's decision to travel to Cameroon in lieu of attending Mr. Ngale's November 7, 2016, Merits and Bond Hearings is a testament to his selfish motive. He claimed multiple times that Mr. Ngale's family was responsible for supplying him with airfare from Cameroon to Los Angeles and that they failed to do so, thus warranting his absence. The family's provision of travel expenses, however, was not part of Respondent's fee agreement with Mr. Ngale. Moreover, the repeated finger-pointing speaks to

27

Respondent's lack of remorse and indifference to making restitution, as further demonstrated by his statement to Bar Counsel that Mr. Ngale should have thanked him rather than file a complaint. *See Aita*, 458 Md. at 130 ("where an attorney attempts to shift blame onto the client, we prefer to focus squarely on the conduct of the attorney.") (internal citations omitted).

## V.

### The Sanction

We are left to decide the appropriate sanction for Respondent's misconduct. Sanctions are imposed to protect the public, not to punish the lawyer. *Attorney Grievance Comm'n v. Phillips*, 451 Md. 653, 677 (2017). Furthermore, they serve as deterrence against similar misconduct. *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 596 (2005). We evaluate the facts and circumstances of each case to ensure that the sanction ordered is "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 537 (2003).

Disbarment is the appropriate sanction for Respondent's numerous violations of the MARPC while representing a vulnerable client. Among other violations, Respondent neglected and abandoned his client; made misrepresentations to Bar Counsel and the Immigration Court; mishandled funds; and failed to keep records. There are multiple aggravating factors contributing to this sanction and no mitigating factors to that would persuade us to moderate it.

28

Respondent's pattern of dishonesty in his dealings with the Immigration Court and during these disciplinary proceedings warrants disbarment. *See Attorney Grievance Comm'n v. Peters-Hamlin*, 447 Md. 520, 547–49 (2016) (remarking that "disbarment is ordinarily the sanction for intentional dishonest conduct"). The various and conflicting excuses for Respondent's failure to appear at the November 7, 2016, Merits and Bond Hearings constitute unjustifiable misrepresentations. *See Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 414 (2001) (requiring disbarment for stealing, dishonesty, fraudulent conduct, etc., absent compelling circumstances to lessen the sanction). Respondent's neglect of his client's affairs, including his failure to communicate with his client, also warrants disbarment. *See Attorney Grievance Comm'n v. Mitchell*, 445 Md. 241, 263 (2015) (citation omitted); *see also Thomas*, 440 Md. at 558 (collecting cases).

Considering the numerous violations of the MARPC, in conjunction with the aggravating factors and lack of mitigating factors discussed above, we disbar Respondent.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JUDE AMBE.**

29